**No. 24-10271**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

---

David Bakutis, as Temporary Administrator for the Estate of Atatiana Jefferson,

Plaintiff - Appellee

v.

Aaron Dean,

Defendant - Appellant

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

---

**BRIEF OF APPELLANT AARON DEAN**

---

Kenneth E. East
State Bar No. 00790622
THE LAW OFFICE OF KENNETH E. EAST
306 W. 7th Street, Suite 600
Fort Worth, Texas 76102
(817) 788-1111
Fax:  (817) 485-2836
ken@east.law

COUNSEL FOR DEFENDANT-APPELLANT
AARON DEAN

# CERTIFICATE OF INTERESTED PERSONS

(1)    Case No. 24-10271; David Bakutis, as Temporary Administrator for the Estate of Atatiana Jefferson, Plaintiff - Appellee v. Aaron Dean, Defendant - Appellant.

(2)    The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

David Bakutis, as Temporary Administrator for the Estate of Atatiana Jefferson (Plaintiff - Appellee)

Jerome Eschor (claimed wrongful death beneficiary)

Aaron Dean (Defendant - Appellant)

City of Fort Worth (Defendant below)

John Joseph Coyle, III of McEldrew Purtell, Devi Rao of Roderick & Solange MacArthur Justice Center, John P Kennedy and Rizwan A. Qureshi of Reed Smith LLP (Counsel for Plaintiff - Appellee)

Kenneth E. East, Law Office of Kenneth E. East (Counsel for Defendant - Appellant Dean)

Laetitia Coleman Brown, City of Fort Worth (Counsel for City of Fort Worth)

/s/ Kenneth E. East
Kenneth E. East
COUNSEL FOR DEFENDANT-APPELLANT
AARON DEAN

## ORAL ARGUMENT IS REQUESTED

In this police use-of-force case, Defendant-Appellant Aaron Dean requests oral argument. The district court erred regarding Plaintiff-Appellee's excessive force claim by crediting nothing more "than a sheer possibility that [Appellant] acted unlawfully," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), when evaluating what it described as the "dispositive elephant in the room" — i.e., whether Atatiana Jefferson "held or threateningly brandished a weapon," given Appellee's single, fleeting allegation only that Jefferson did not "point" a weapon at Dean. ROA.870.

But perhaps even more significant to the general jurisprudence governing police conduct and officers' entitlement to qualified immunity, the district court also erred by denying Dean immunity as to Appellee's separate trespass-type unlawful search claim, despite Appellee's own admissions in his pleading that Dean was following his training and departmental policies when responding to the exigency of what Appellee admits Dean was required to treat as an active home burglary call, and failing to cite any applicable clearly established law. ROA.874.

Given the importance of this case, not only due to the unfortunate loss of life the excessive force claim involves, but also potential liability without clear guidance to officers who try to protect life and property and look for suspects raised by the search holding, Dean believes oral argument is needed and would benefit the Court.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS. . . . . . . . . . . . . . . . . . . . . . . . . . . iv

ORAL ARGUMENT IS REQUESTED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . viii

I.  STATEMENT REGARDING JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  STATEMENT OF THE ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.  STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    A.   Appellee's own allegations describe an officer responding to a late-night burglary-type call, following his training, and encountering a threat. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    B.   Current Parties and Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    C.   Relevant Procedural History . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

IV.  SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    A.   Officer Dean, according to Appellee's own allegations, did his job as he was trained and required to and fired his weapon only after being suddenly confronted by an armed (or at least, per Plaintiff's claims, presumably armed) individual. Dean's actions did not violate the Constitution . . . . . . . . . . . . . . . . . . . . . . . . 10

    B.   Dean violated no clearly-established law by merely doing his job and taking minimally-intrusive action to protect the subject home and its occupants and safely look for signs of any potential burglar, and not reversing on this point would send a confusing and dangerous message to police officers striving to protect the public and their property . . . . . . . . . . . . . . . . . . . . . . . . 12

V. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    A.   The Standard of Review is de novo, and the burden is on
         Appellee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    B.   Motion to Dismiss . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    C.   Qualified Immunity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    D.   Defendant Dean's only use of force did not violate the Fourth
         Amendment, and he is entitled to qualified immunity.

         1.   Plaintiff's pleadings are not sufficient. . . . . . . . . . . . . . . . . . . . 17

         2.   Excessive force claims, generally . . . . . . . . . . . . . . . . . . . . . . . 18

         3.   Deadly force . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

         4.   Any claims prior mistakes are irrelevant . . . . . . . . . . . . . . . . . 20

         5.   Dean's decision did not violate the Constitution. . . . . . . . . . . . 21

         6.   The district court's error as to the excessive force claim . . . . . 23

         7.   No clearly established law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

    E.   Appellee's unlawful search claim fails, and Dean is entitled to
         qualified immunity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

         1.   Dean's mere entry onto the property and
             protective sweep of the home's exterior did not
             violate the Constitution . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

         2.   No clearly established law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

         3.   The district court's incorrect analysis . . . . . . . . . . . . . . . . . . . . 29

4.    Ample case law supports Dean's actions; none under remotely-similar facts clearly condemns it; and it is not clear even that Dean's sweep of the home's perimeter was a "search" at all under the Fourth Amendment. . . . . . . . . . . . . . . . . . . . . 35

VI.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

# TABLE OF AUTHORITIES

## *Cases*

*Argueta v. Jaradi*,
  86 F.4th 1084 (5th Cir. 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Ashcroft v. al-Kidd*,
  563 U.S. 731 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 13, 22, 25

*Barocio v. State*,
  158 S.W.3d 498 (Tex. Crim. App. 2005) . . . . . . . . . . . . . . . . . . . . . . . 36

*Bilida v. McCleod*, 211 F.3d 166 (1st Cir. 2000) . . . . . . . . . . . . . . . . . 27, 29, 36

*Bros. v. Zoss*,
  837 F.3d 513 (5th Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Brumfield v. Hollins*,
  551 F.3d 322 (5th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Caniglia v. Strom*,
  593 U.S. 194 (2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Carswell v. Camp*,
  54 F.4th 307 (5th Cir. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Chey v. LaBruno*,
  608 F. Supp. 3d 161 (D.N.J. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*City & Cnty. of San Francisco, Calif. v. Sheehan*,
  575 U.S. 600 (2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*City of Tahlequah, Oklahoma v. Bond*,
  595 U.S. 9 (2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Cooper v. Brown*,
　　844 F.3d 517 (5th Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Deville v. Marcantel*,
　　567 F.3d 156 (5th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Elder v. Holloway*,
　　510 U.S. 510 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Foster v. City of Lake Jackson*,
　　28 F.3d 425 (5th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Fraire v. City of Arlington*,
　　957 F.2d 1268 (5th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Garcia v. Blevins*,
　　957 F.3d 596 (5th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Gorman v. Sharp*,
　　892 F.3d 172 (5th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Graham v. Connor*,
　　490 U.S. 386 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Hale v. City of Biloxi, Mississippi*,
　　731 F. App'x 259 (5th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*Harmon v. City of Arlington, Texas*,
　　16 F.4th 1159 (5th Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Harris v. Serpas*,
　　745 F.3d 767 (5th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Henderson v. Harris Cnty., Texas*,
　　51 F.4th 125 (5th Cir. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Hunter v. Bryant*,
  502 U.S. 224 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Jones v. Shivers*,
  697 F. App'x 334 (5th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*King v. Montgomery Cnty., Tennessee*,
  797 F. App'x 949 (6th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . 32, 33

*Malley v. Briggs*,
  475 U.S. 335 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Manis v. Lawson*,
  585 F.3d 839 (5th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . 18, 20, 23, 24,2 5

*Morrow v. Meachum*,
  917 F.3d 870 (5th Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Ontiveros v. City of Rosenberg, Tex.*,
  564 F.3d 379 (5th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24, 25

*Pearson v. Callahan*,
  555 U.S. 223 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*Ramirez v. Knoulton*,
  542 F.3d 124 (5th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Richardson v. McKnight*,
  521 U.S. 399 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Rivas-Villegas v. Cortesluna*, 595 U.S. 1 (2021) . . . . . . . . . . . . . . . . . . . . . . 16, 34

*Rockwell v. Brown*,
  664 F.3d 985 (5th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 21

*Salazar-Limon v. City of Houston*,
  826 F.3d 272 (5th Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Schultea v. Wood*,
    47 F.3d 1427 (5th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 9, 25

*Smith v. Heap*,
    31 F.4th 905 (5th Cir. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Stadt v. State*,
    120 S.W.3d 428 (Tex. App. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*State v. Restrepo*,
    878 S.W.2d 327 (Tex. App. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Sumner v. Darrin*,
    No. CV 03-40080-FDS,
    2006 WL 8458645 (D. Mass. June 29, 2006) . . . . . . . . . . . . . . . . . . . 28, 36

*Tarver v. City of Edna*,
    410 F.3d 745 (5th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Taylor v. Michigan Dep't of Nat. Res.*,
    502 F.3d 452 (6th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38, 39

*Thacker v. City of Columbus*,
    328 F.3d 244 (6th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*Torns v. City of Jackson*,
    622 F. App'x 414 (5th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 24

*Trevino v. Hinz*,
    751 F. App'x 551 (5th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*United States v. Johnson*,
    9 F.3d 506 (6th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 36

*United States v. McCullough*,
    457 F.3d 1150 (10th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 36

*United States v. Taylor*,
   458 F.3d 1201 (11th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*Vincent v. City of Sulphur*,
   805 F.3d 543 (5th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Walker v. Wilburn*,
   No. 3:13-CV-4896-D, 2018 WL 5848857 (N.D. Tex. Nov. 8, 2018). . . . . . 8

*White v. Pauly*, 580 U.S. 73 (2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Woods v. Harris Cnty., Texas*,
   No. 22-20482, 2024 WL 1174185 (5th Cir. Mar. 19, 2024). . . . . . . . . . . 34

*Ybarra v. Davis*,
   489 F. Supp. 3d 624 (W.D. Tex. 2020) . . . . . . . . . . . . . . . . . . . . . . . . 34, 35

### Constitution, Statutes, and Rules

U.S. Const. amend. IV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 16

Fed. R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 13

# I.

## STATEMENT REGARDING JURISDICTION

Appellant Aaron Dean brings this interlocutory appeal from the district court's order denying his Rule 12(b)(6) motion to dismiss based on qualified immunity. This Court has jurisdiction because, under these circumstances, Dean "can immediately appeal the district court's denial under the collateral order doctrine." *Carswell v. Camp*, 54 F.4th 307, 312 (5th Cir. 2022), cert. denied, 144 S. Ct. 73 (2023). This is so because qualified immunity is an immunity from the lawsuit itself, not just liability, and it must, therefore, be addressed at the earliest possible stage of the litigation. *Id.* at 310.

Under the collateral order doctrine, an order denying qualified immunity at the motion to dismiss stage is considered to be "a final decision subject to immediate appeal." *Ashcroft v. Iqbal*, 556 U.S. 662, 672 (2009). As the Court explained, "the applicability of the doctrine in the context of qualified-immunity claims is well established; and this Court has been careful to say that a district court's order rejecting qualified immunity at the motion-to-dismiss stage of a proceeding is a "final decision" within the meaning of [28 U.S.C.] § 1291." *Id.*

## II.

## STATEMENT OF THE ISSUES

**The district court erred when it denied Dean's Motion to Dismiss based on Qualified Immunity.**

1.  With respect to Plaintiff-Appellee's excessive force claim, despite having been ordered to re-plead his case with factual "particularity . . . including detailed facts supporting any contention that the plea of qualified immunity cannot be sustained," ROA.521, Appellee's allegations fail to plead facts that could allow a court to infer anything more "than a sheer possibility that [Dean] acted unlawfully" when he fired a single shot after being suddenly confronted by a figure in a window who — all that Appellee suggests — did not "point" her weapon at Dean. Plaintiff has also failed to demonstrate that Dean violated any clearly established law under the alleged facts as properly construed. Has Appellee failed to overcome Dean's entitlement to qualified immunity as to the excessive force claim?

2.  With respect to his unlawful search of the home's yard claim, Appellee pleads that Officer Dean followed his training and departmental policies when he walked the perimeter of a house to which he was dispatched

pursuant to a call he was required to treat as a "burglary in progress" call. Appellee and the district court fail to cite any authority even suggesting, much less clearly establishing, that it was not reasonable for Dean to believe the exigency presented by the call he received justified the minimally-intrusive perimeter sweep. Has Appellee failed to overcome Dean's entitlement to qualified immunity as to the search claim?

### III.

### STATEMENT OF THE CASE

**A.    Appellee's own allegations describe an officer responding to a late-night burglary-type call, following his training, and encountering a threat.**

By Plaintiff-Appellee's own allegations, Defendant-Appellant Officer Aaron Dean responded to what he was trained and ordered to treat as "a burglary in progress call" at 2:30 in the morning and did his job, per Appellee's claims, exactly as Appellee says he was trained to do it, when he was suddenly confronted by a figure in a window. ROA.526; ROA.541-42.

Despite having specifically been ordered to re-plead his case with factual "particularity . . . including detailed facts supporting any contention that the plea of qualified immunity cannot be sustained," ROA.521 (citing *Schultea v. Wood*, 47 F.3d 1427, 1432-33 (5th Cir. 1995)), all Appellee describes about the actions of the person in the window is that she did not "point" a weapon at Dean, as Dean was shouting in that terrifying instant, per Plaintiff's own allegations, "Put your hands up! Show me your hands!" ROA.528, before drawing and firing his own weapon a single time. ROA.528.

More specifically, in the early morning hours of October 12, 2019, as Plaintiff-Appellee alleges, the Fort Worth Police Department dispatched Defendant-Appellant Officer Aaron Dean to a call. ROA.525; ROA.541-42. According to Appellee, Officer

Dean was directed by the dispatcher and by department policy to investigate, in essence, an active burglar alarm call at a residence at approximately 2:30 in the morning. ROA.514-42. Appellee explains that a neighbor had called police to report that the front door of a house located at 1203 E. Allen Street was open and that it was not normal for that house to be visibly open at that time of night. ROA.525; ROA.541-42. Appellee does not provide the exact substance of that call, nor does he include the exact information that the police dispatcher relayed to Officer Dean, but Appellee admits that the call went out as an "open structure" call. ROA.525; ROA.541-42.

And significantly, as Plaintiff-Appellee himself explains, the Fort Worth Police Department trains its officers that an "open structure" call is effectively the exact same thing as an active burglar alarm call. ROA.541-42. Appellee further explains that "the Fort Worth Police Department does not have a specific policy directive for its officers responding to a report of an open door and tells its officers to treat such calls the same as a home's alarm going off." ROA.541. (It also comports with common sense that citizens would not be reporting *non*-suspicious open doors to the police.) In short, Appellee unequivocally alleges that Officer Dean was directed (ordered) to respond to the call and to treat it as an active residential burglar alarm or "a burglary in progress" call. ROA.542.

Appellee does not include many specifics in his pleading about how officers are trained to respond to active alarm calls, but he admits that the process includes covertly inspecting the perimeter of the premises (obviously so as not to alert potential burglars or intruders to their presence as such suspects might flee or even ambush officers). As Appellee derisively characterizes it, officers are trained to "silently sneak[] into backyards" under such circumstances. ROA.542.

Appellee then alleges only that Officer Dean did exactly as Appellee alleges he was ordered and trained to do. Dean arrived at the scene at around 2:30 a.m. ROA.525-26. He proceeded, along with his co-responding officer, to examine the perimeter of the structure (obviously looking for signs of burglary or endangered persons). ROA.525-26. Appellee does not deny that the officers were on-duty patrol officers in full police uniforms, but he alleges that they never verbally announced their presence or identities as they were inspecting the perimeter of the property, which, as Appellee admits, would be consistent with their training and directives for handling such calls. ROA.525-26; ROA.541-42.

Appellee then alleges that as Officer Dean was inspecting the property, he looked into one of the windows, when Atatiana Jefferson suddenly "appeared in the window," at which time Officer Dean "began shouting, Put your hands up! Show me your hands!" ROA.528. Officer Dean then fired a single shot from his handgun,

which struck and, tragically, killed Ms. Jefferson. ROA.528. Significantly, Appellee does *not* allege what Ms. Jefferson was doing when she approached the window, whether or not she was holding a gun, or what she was doing as Officer Dean shouted his commands.

After being ordered by the district court to re-plead his claims, "alleging with particularity all material facts establishing [his] right to recovery as to Dean, including detailed facts supporting any contention that the plea of qualified immunity cannot be sustained," ROA.521, Appellee added only an oblique reference to Ms. Jefferson possessing a weapon, alleging that a camera did not show her *pointing* a weapon at Dean. ROA.527. While the allegation appears implicitly to admit that Jefferson possessed a weapon, again Appellee provided no context or explanation about what she did or did not do and precisely what type of weapon she possessed as she approached and appeared in the window. (Glaringly, despite multiple opportunities to do so, and despite a court order to plead with factual specificity, Appellee never alleges that Jefferson did not possess a weapon.)

Again, Appellee does not describe any specific weapon or Jefferson's actions, leaving the Court to guess. Without any additional detail beyond conclusory pronouncements labeling Officer Dean's actions as "murder," Appellee, as will be

explained further below, has not pleaded facts sufficient to state a claim or to overcome Dean's entitlement to qualified immunity.[1]

## B.    Current Parties and Claims

Plaintiff-Appellee David Bakutis is the only remaining named plaintiff, and the only appellee, in this case. Bakutis appears to be the duly-appointed administrator for the Estate of Atatiana Jefferson, deceased. His live complaint is "Plaintiff's Second Amended Complaint." ROA.522. Bakutis purports to be bringing claims on behalf of Atatiana Jefferson's estate and on behalf of any and all statutory wrongful death beneficiaries that may have claims to assert related to her death. ROA.522-23.

Appellee is suing Dean for alleged Fourth Amendment violations (alleged excessive force, ROA.544, and alleged unlawful search, ROA.543), pursuant to 42 U.S.C. § 1983 and seeks damages pursuant to 42 U.S.C. § 1988's incorporation of the

---

[1] Appellee states that Dean was indicted for murder and convicted of manslaughter as a result of the alleged events. ROA.527. But all that suggests is that a jury determined Dean *not* to be guilty of the type of conduct alleged by Plaintiffs herein. That is, Dean's conviction of the lesser-included offense of manslaughter serves as an acquittal as to the charge of murder. *Stadt v. State*, 120 S.W.3d 428, 438 (Tex. App. 2003), aff'd, 182 S.W.3d 360 (Tex. Crim. App. 2005) ("As a matter of federal and state law, a conviction for a lesser offense constitutes an acquittal of the greater offense."); *State v. Restrepo*, 878 S.W.2d 327, 328 (Tex. App. 1994) ("Thus, when the jury returned a verdict finding Restrepo guilty of manslaughter, it implicitly acquitted him of the charged offense of murder."). And manslaughter is a reckless offense, while murder requires intentional or knowing conduct, more like the constitutional violations alleged herein. *See Watson v. Bryant*, 532 Fed. Appx. 453, 457 (5th Cir. 2013) (per curiam); *Walker v. Wilburn*, No. 3:13-CV-4896-D, 2018 WL 5848857, at *7 (N.D. Tex. Nov. 8, 2018).

Texas Wrongful Death and Survival Statutes. *See* Tex. Civ. Prac. & Rem. Code §§ 71.001-71.021.

A prior plaintiff party in the case below, Amber Carr on behalf of Z.C., a minor, has dismissed all claims on behalf of that party, and is no longer a party to this case. *See* ROA.856.

Defendant-Appellant Aaron Dean, at all relevant times a Fort Worth police officer, is the only appellant in this appeal. The City of Fort Worth, at all relevant times Dean's governmental employer, is a defendant below but not a party to this appeal.

## C.    Relevant Procedural History

Defendant-Appellant Dean filed a (first) motion to dismiss based on qualified immunity, ROA.485, as well as a motion to stay discovery. ROA.516. The district court granted the motion to stay discovery as to all parties. ROA.520. But in that same order, the district court summarily denied "without prejudice" the motion to dismiss and ordered Plaintiff to file a second amended complaint designed also to serve essentially as a *Schultea* Rule 7(a) Reply. ROA.521 (citing *Schultea v. Wood*, 47 F.3d 1427, 1432-33 (5th Cir. 1995)). Appellee then filed Plaintiff's Second Amended Complaint on April 24, 2023. ROA.522. In response to that amended complaint, Dean again filed a motion to dismiss, asserting qualified immunity. ROA.571.

On March 15, 2024, the district court denied Dean's motion to dismiss. ROA.865.

On March 26, 2024, Dean timely filed his notice of appeal. ROA.902.

## IV.

## SUMMARY OF THE ARGUMENT

Plaintiff-Appellee has failed to allege facts sufficient to meet his pleading burdens both to state a claim and to demonstrate the violation of any clearly established law by Defendant-Appellant Dean. This is true for each of his separate Fourth Amendment claims, one for alleged excessive force and one for alleged unlawful search.

**A.    Officer Dean, according to Appellee's own allegations, did his job as he was trained and required to and fired his weapon only after being suddenly confronted by an armed (or at least, per Plaintiff's claims, presumably armed) individual. Dean's actions did not violate the Constitution.**

With regard to the excessive force claim, despite being given the opportunity to, and indeed being ordered to, plead with enough factual particularity sufficient both to state a claim and to overcome Dean's qualified immunity, Plaintiff-Appellee in his Second Amended Complaint pleads only enough facts to allow a Court to imagine a speculative scenario in which Dean could have possibly acted unlawfully. Appellee, in other words, has raised no more "than a sheer possibility that [Dean]

acted unlawfully." It is not enough to state a claim or to defeat Dean's qualified immunity.

Specifically, with what the district court characterized as the "dispositive elephant in the room," i.e., with what weapon, if any, Atatiana Jefferson was armed and what she did, when Dean was conducting a perimeter sweep of her home in response to a call he was to treat as an active home burglary according to Plaintiff-Appellee, *absolutely all* Appellee has to say on the subject is that Jefferson never "pointed" a weapon at Dean.

The allegation suggests that Jefferson was armed when, according to Plaintiff-Appellee, Dean was suddenly confronted by her figure in a window and desperately shouted, "Put your hands up! Show me your hands," before firing a single shot that tragically took Jefferson's life. It says nothing about what her weapon was or what she did with it. Plaintiff-Appellee has not pleaded facts sufficient to state a plausible claim. Appellee does not ever even allege, even in conclusory fashion, that Jefferson was unarmed. Despite the tragic outcome in this case, the allegations do not state a plausible claim, and Dean drawing his weapon and firing a single shot did not violate Jefferson's constitutional rights or any clearly established law.

**B.    Dean violated no clearly-established law by merely doing his job and taking minimally-intrusive action to protect the subject home and its occupants and safely look for signs of any potential burglar, and not reversing on this point would send a confusing and dangerous message to police officers striving to protect the public and their property.**

With regard to Plaintiff-Appellee's alleged unlawful search claim, Dean, again according to Appellee's own allegations, did his job exactly as he was trained and required to do it. He responded to a call of a suspicious open structure he was required to treat as an active burglary call at 2:30 in the morning. When he and his fellow officer arrived on the scene, they did nothing more than begin to conduct a brief perimeter check of the premises when their inquiry was cut short by Jefferson's sudden appearance in the window, as described above. Dean did not violate the Constitution by doing his job under these circumstances, and the law certainly is not clearly established that he did.

Even assuming such a protective sweep or survey of the perimeter of a home under such circumstances constitutes a "search" at all for Fourth Amendment purposes, such minimal intrusion, designed to protect the home and its occupants, given the nature of the call to which Dean was dispatched, is allowed under the Fourth Amendment's exigency exception. Many cases have so held, and neither Plaintiff-Appellee nor the district court, have cited *any* cases suggesting that under

any remotely factually similar circumstances, Dean's conduct violated any clearly established law. Dean is entitled to qualified immunity.

## V.

## ARGUMENT

### A.   The Standard of Review is *de novo*, and the burden is on Appellee.

"This court reviews de novo a district court's denial of a motion to dismiss on grounds of qualified or absolute immunity." *Hyatt v. Thomas*, 843 F.3d 172, 177 (5th Cir. 2016) (quoting *Terwilliger v. Reyna*, 4 F.4th 270, 279 (5th Cir. 2021)). "When an official asserts QI, the plaintiff bears the burden to rebut that defense." *Smith v. Heap*, 31 F.4th 905, 910 (5th Cir. 2022).

### B.   Motion to Dismiss

Dismissal is appropriate if a plaintiff's pleading fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Defendant is entitled to have the claims against him dismissed unless the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citations omitted). That is, even though at the motion to dismiss stage a plaintiff's well-pleaded facts are to be

accepted as true, "bare assertions" and "conclusory" allegations "are not entitled to the assumption of truth." *Id.* at 682. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (citations omitted).

## C.    Qualified Immunity

The doctrine of qualified immunity protects both public officials and the public. It affords public officials protection "from undue interference with their duties and from potentially disabling threats of liability." *Elder v. Holloway*, 510 U.S. 510, 514  (1994). At the same time, it protects "the public from unwarranted timidity on the part of public officials." *Richardson v. McKnight*, 521 U.S. 399 (1997) (quoting *Butz v. Economou*, 438 U.S. 478 (1978)). It addresses the "need to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority." *Harlow*, 457 U.S. at 806.

Public officials sued in their individual capacities are presumed to enjoy qualified immunity, which is an immunity from the lawsuit itself, not merely from liability. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). Qualified immunity is the rule, not the exception. *Foster v. City of Lake Jackson*, 28 F.3d 425, 428 (5th Cir. 1994) ("Abrogation of qualified immunity is properly the exception, not the rule.").

Analysis of qualified immunity claims involves one or both of the following: the determination as to whether the plaintiff demonstrated a violation of a clearly established constitutional right; and, if so, whether, at the time of the alleged violation the right was so clearly established a reasonable official in the defendant's situation would have understood that his conduct violated the right. *Pearson v. Callahan*, 555 U.S. 223, 241 (2009).

Defendant-Appellant Dean asserts his entitlement to qualified immunity, and Plaintiff-Appellee has not pleaded facts to show that Dean was ever anything other than a public official performing discretionary functions within the course and scope of his employment and authority and whose actions were objectively reasonable and not in violation of any of Appellee's clearly established statutory or constitutional rights. "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011); *see also Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is designed to shield from civil liability "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Its protection "applies regardless of whether the government official's error is 'a mistake of law, a mistake

of fact, or a mistake based on mixed questions of law and fact.'" *Pearson v. Callahan*, 555 U.S. 223 (2009) (citation omitted). And significantly, Plaintiff "has the burden to negate the [qualified immunity] defense once properly raised." *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

A constitutional right is clearly established for purposes of § 1983 only if the plaintiff can demonstrate that any claimed wrongdoing violated some clearly established federal law of which the defendant should have known and that is sufficiently particularized to the facts of the case. *White v. Pauly*, 580 U.S. 73, 77-78 (2017). The Supreme Court has continued to stress the demanding nature of these standards and the specificity required. *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021) ("Even assuming that controlling Circuit precedent [can] clearly establish[] law" it is the plaintiff's burden "to identify a case that put[s] [a defendant] on notice that his specific conduct was unlawful."); *City of Tahlequah, Oklahoma v. Bond*, 595 U.S. 9, 14 (2021) ("Neither the panel majority nor the respondent has identified a single precedent finding a Fourth Amendment violation under similar circumstances. The officers were thus entitled to qualified immunity.").

**D.    Defendant Dean's only use of force did not violate the Fourth Amendment, and he is entitled to qualified immunity.**

**1.    Plaintiff's pleadings are not sufficient.**

"To surmount [the qualified immunity] barrier at the motion to dismiss stage, the plaintiffs 'must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm [they have] alleged and that defeat a qualified immunity defense with equal specificity.'" *Torns v. City of Jackson*, 622 F. App'x 414, 416 (5th Cir. 2015) (citing *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012)). Here, Plaintiff-Appellee alleges only that Officer Dean was performing his duty as he was trained and instructed to do, investigating an obviously tense and uncertain situation (a possible home burglary at 2:30 in the morning) when he was suddenly confronted by a figure in a window in response to which he fired a single shot. Given those circumstances, Appellee has failed to allege any "specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm [they have] alleged and that defeat a qualified immunity defense with equal specificity." Again, Appellee does not allege even what it is that Ms. Jefferson did when at the window or even, expressly, whether or not she was armed with a gun or some other weapon.

### 2. Excessive force claims, generally.

Appellee's claim of excessive force is to be analyzed under the Fourth Amendment and its reasonableness standard. *Graham v. Connor*, 490 U.S. 386 (1989). To prevail on his Fourth Amendment excessive-force claim, Appellee must establish "(1) injury, (2) which resulted directly and only from a use of force that was *clearly excessive,* and (3) the excessiveness of which was clearly unreasonable." *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009); *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005)). Courts should not second-guess an officer's judgment, should not expect the officer to have followed the most prudent course of conduct as judged by 20/20 hindsight, and should not forget that the "calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving . . . ." *Graham*, 490 U.S. at 390.

### 3. Deadly force.

Officers are justified in using even deadly force whenever they reasonably perceive an immediate threat of serious bodily harm or death to themselves or others. *Rockwell v. Brown*, 664 F.3d 985, 991 (5th Cir. 2011) *cert. denied*, 132 S. Ct. 2433 (U.S. 2012) (citing *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009)). Under such circumstances, an officer need not suffer any actual injury before using deadly force,

and he need not exhaust all less intrusive means before resorting to deadly force. *Ramirez v. Knoulton*, 542 F.3d 124, 130 (5th Cir. 2008) ("The Fourth Amendment does not require police officers to wait until a suspect shoots to confirm that a serious threat of harm exists.") (quoting *Elliott v. Leavitt*, 99 F.3d 640, 643 (4th Cir. 1996)).

Here, Appellee suggests obliquely that Ms. Jefferson was armed but hedges only by saying a video did not capture her *pointing* her weapon at Officer Dean. But the law is clear. "A police officer does not have to permit a suspect to aim his weapon before answering the threat." *Jones v. Shivers*, 697 F. App'x 334 (5th Cir. 2017) (citing *Salazar-Limon v. City of Houston*, 826 F.3d 272, 279 n.6 (5th Cir. 2016), as revised (June 16, 2016)). As the Fifth Circuit noted in *Salazar-Limon*, "[W]e have never required officers to wait until a defendant turns towards them, with weapon in hand, before applying deadly force to ensure their safety." 826 F.3d at 279 n. 6. So without telling the Court what weapon Jefferson had and what she did with it before and as Dean was desperately shouting commands at her, Appellee has not provided enough information to the Court to state a claim or to overcome Dean's entitlement or to qualified immunity.

"An officer's use of deadly force is not excessive, and thus no constitutional violation occurs, when the officer reasonably believes that the suspect poses a threat of serious harm to the officer or to others. The question is one of 'objective

reasonableness,' not subjective intent, and an officer's conduct must be judged in light of the circumstances confronting him, without the benefit of hindsight." *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009) (citations omitted). Despite the Court's order to re-plead with factual specificity, Appellee deliberately omitted a complete description of the relevant circumstances.

### 4. Any claims of prior mistakes are irrelevant.

Although Appellee admits that Officer Dean was performing his duties as ordered and instructed (and his actions leading up to the use of force decision were legal and proper as explained below), for analysis of the excessive force claim, all that matters is the very instant Officer Dean was forced to make his split-second use of force decision. As the Supreme Court has explained it, a plaintiff cannot "establish a Fourth Amendment violation based merely on bad tactics that result in a deadly confrontation that could have been avoided." *City & Cnty. of San Francisco, Calif. v. Sheehan*, 575 U.S. 600, 615 (2015) (cleaned up). As the Fifth Circuit has recognized:

> The United States Supreme Court has long held that courts must look at the "totality of the circumstances" when assessing the reasonableness of a police officer's use of force. This Court, however, has narrowed that test, holding that "[t]he excessive force inquiry is confined to whether the [officer] was in danger at the moment of the threat that resulted in the [officer's] shooting." ***Therefore, any of the officers' actions leading up to the shooting are not relevant for the purposes of an excessive force inquiry in this Circuit.***

*Harris v. Serpas*, 745 F.3d 767, 772 (5th Cir. 2014) (emphasis added) (internal citations omitted); *see also Rockwell v. Brown*, 664 F.3d 985, 993 (5th Cir. 2011) ("We need not look at any other moment in time."); *Bazan ex rel. Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 493 (5th Cir. 2001) ("The excessive force inquiry is confined to whether the Trooper was in danger at the moment of the threat that resulted in the Trooper's shooting Bazan."); *Fraire v. City of Arlington*, 957 F.2d 1268, 1276 (5th Cir. 1992) (rejecting argument that officers had "manufactured the circumstances that gave rise to the fatal shooting" and holding that "regardless of what had transpired up until the shooting itself, Young's movements gave the officer reason to believe, at that moment, that there was a threat of physical harm.").

### 5.  Dean's decision did not violate the Constitution.

In his live pleading, Appellee seems to realize the problem he has. He apparently understands that he cannot affirmatively allege that at the critical moment Officer Dean made his use of force decision he was not suddenly confronted with an unknown, armed subject, raising a gun toward him — something that what would obviously appear to be an imminent threat of death or serious bodily injury. In the section of his amended complaint asserting an excessive force claim, Appellee never alleges facts, only broad, general conclusions, claiming that Dean used "excessive and deadly force . . . without legal justification." ROA.541-44, Of course,

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. And in his factual recitation he now mentions only that a video does not show Jefferson *pointing* a weapon at Dean.

In order to try to make up for his inability to plead such facts, Appellee tries to deflect the Court's attention to other, irrelevant, allegations, *repeatedly* referring to Officer Dean's "course of conduct" throughout the entire response to the call, claiming Dean "entered the side and rear of the property without probable cause . . . ." ROA.544. Again, when trying to explain the excessive force claim, Plaintiff-Appellee states, "Defendant Dean engaged in a course of conduct that violated Jefferson's Fourth Amendment rights which began with his unlawful entry onto the property . . . ." ROA.544. As discussed above in the preceding section and the cases cited therein, even if such claims were valid, they would not matter to the excessive force analysis. That is, a plaintiff "cannot manufacture an excessive force claim where one would not otherwise exist by pointing to other purported constitutional violations." *Hale v. City of Biloxi, Mississippi*, 731 F. App'x 259, 263 (5th Cir. 2018) (cleaned up). While Appellee alleges that Ms. Jefferson was rightfully present in her mother's home when this unfortunate event occurred, that does not mean Officer Dean violated the United States Constitution when he made his use of force decision.

*See, e.g., Gorman v. Sharp*, 892 F.3d 172, 173 (5th Cir. 2018) ("But the Constitution does not afford a cure for every tragedy."); *Bros. v. Zoss*, 837 F.3d 513, 515 (5th Cir. 2016) ("[E]ven on plaintiffs' version of the tragic facts, the officers did not violate Sullivan's constitutional rights.").

Appellee has described a tragic event, but he has not pleaded facts that, even if assumed to be true, are specific enough and sufficient to show Officer Dean acted unreasonably under the circumstances described. "[S]peculation that deadly force was unjustified" is not sufficient. *Manis v. Lawson*, 585 F.3d 839, 845 (5th Cir. 2009). "[A]ttempting to use . . . undisputed facts to imply a speculative scenario" is not sufficient. *Ontiveros v. City of Rosenberg, Tex.*, 564 F.3d 379, 383 (5th Cir. 2009). Because Appellee has not pleaded facts to show that Officer Dean did not act reasonably at the moment he made his use of force decision and because any events prior to that moment are not relevant to the excessive force analysis, the Court should reverse and dismiss Appellee's excessive force claim against Officer Dean.

### 6.    The district court's error as to the excessive force claim.

Despite ordering Appellee to re-plead his case with factual "particularity . . . including detailed facts supporting any contention that the plea of qualified immunity cannot be sustained," ROA.521, the district court improperly accepted Appellee's conclusory allegations as sufficient. ROA.870. And the district court incorrectly

summarized Dean's position, claiming, "Defendant hinges the reasonableness of his use of force on the supposition that Plaintiff failed to allege that she **did not** have a weapon. Therefore, Defendant acted as a reasonable officer in believing that she could have had one — justifying lethal force." ROA.870 (emphasis in original). But this reflects a misreading of Dean's argument. Dean certainly is not arguing that he had a right to shoot someone whether or not they were apparently armed or apparently threatening in any way, as the court's analysis seems to suggest. Rather, Dean is (correctly) arguing that it is Plaintiff-Appellee's burden both to plead facts sufficient to state a claim and to overcome Dean's entitlement to qualified immunity, and that failing to plead enough detail to allow a court to do nothing more than speculate as to the possible existence of a scenario supportive of liability is not sufficient. *Torns*, 622 F. App'x at 416; *Manis*, 585 F.3d at 845; *Ontiveros*, 564 F.3d at 383.

Appellee's bare allegation that Jefferson did not "point" a weapon at Dean does nothing more than suggest she had a weapon; it does not meet Appellee's burden to plead facts sufficient to allow the Court to plausibly assume Dean acted unlawfully. The district court's subsequent explanation as to burdens misstates and misplaces the applicable standards under *any* pleading scenario, but *especially* in light of the district

court's prior *Schultea*-sanctioned demand for factual specificity. ROA.871;

ROA.521.[2]

In its subject order denying Dean's motion to dismiss, the district court appears

to ignore its prior call for factual particularity and instead accept the plaintiff's failure

not to plead obviously-critical, "dispositive elephant in the room," ROA.870, facts,

such as stating even what Ms. Jefferson was doing and with what type of a weapon

she was armed (or, per Appellee, did not "point" at Dean), as she suddenly appeared

in the window. Plaintiff-Appellee has not pleaded sufficient facts to allow a plausible

inference that Dean just fired on an unarmed, non-threatening person for no reason.

Again, Appellee has failed to plead facts that raise anything more "than a sheer

possibility that [Dean] acted unlawfully." *Iqbal*, 556 U.S. at 678. That is not enough.

### 7.   **No clearly established law**.

There is no shortage of examples in federal case law of situations where

officers who reasonably, even if mistakenly, perceive a threat and use force, even

deadly force, are found not to have violated the constitution and to be entitled to

qualified immunity. *See, e.g.*, *Manis*, 585 F.3d at 845; *Ontiveros*, 564 F.3d 379. But

it is not the defendant's obligation to point out such cases. Rather it is the plaintiff's

---

[2] Plaintiff-Appellee has failed to plead sufficiently under *any* applicable standard, regardless of whether the ordered *Schultea* pleading requirement is viewed as heightening the pleading burden in this case or not, but Appellee plainly did not meet the ordered *Schultea* level of factual particularity.

burden to present a case with sufficiently similar facts to show that Officer Dean clearly violated the law under the particular circumstances he faced. In responding to a motion to dismiss that raises qualified immunity, a plaintiff "must identify 'controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity.'" *Trevino v. Hinz*, 751 F. App'x 551, 554–55 (5th Cir. 2018) (affirming district court's grant of motion to dismiss based on qualified immunity) (quoting *Morgan v. Swanson*, 659 F.3d 359, 371-72 (5th Cir. 2011) (en banc)). If he fails to do so, "[t]hat alone dooms his case here." *Id.* (quoting *Vann v. City of Southaven, Miss.*, 884 F.3d 307, 310 (5th Cir. 2018). Here, Appellee cannot meet his burden, and because Officer Dean violated no clearly established law stated at a proper level of specificity, he is entitled to qualified immunity. The Court should, therefore, dismiss the excessive force claim for this additional reason.

**E.    Appellee's unlawful search claim fails, and Dean is entitled to qualified immunity.**

    **1.    Dean's mere entry onto the property and protective sweep of the home's exterior did not violate the Constitution.**

As discussed above, Plaintiff-Appellee alleges that Officer Dean was directed by his dispatcher and departmental policies to investigate an open structure call, which the FWPD teaches and orders officers to treat the same as a burglary alarm or burglary in progress call. ROA.541-42. Essentially, all that Appellee claims Officer Dean did was to follow his orders and training. ROA.541-42. When he arrived he and his co-responding officer walked the perimeter of the structure. ROA.526-27. Appellee tries to describe this as a violation of a Fourth Amendment right to be free from an unreasonable search. ROA.543.

But there was nothing unconstitutional about Officer Dean performing his duties consistent with departmental training and policies, while investigating what was to be treated as a burglary in progress call, including his walking into the yard of the property and examining the perimeter of the home. Officers responding to such calls are certainly reasonable in following their training and believing that exigent circumstances warrant the minimal intrusion of a perimeter search. *See Bilida v. McCleod*, 211 F.3d 166, 171 (1st Cir. 2000) ("Brierly's entry into the backyard in response to the silent security alarm is a perfectly good example of a perceived

imminent threat . . . ."); *United States v. Johnson*, 9 F.3d 506, 510 (6th Cir. 1993); *United States v. McCullough*, 457 F.3d 1150, 1164 (10th Cir. 2006); *Sumner v. Darrin*, No. CV 03-40080-FDS, 2006 WL 8458645, at *9 (D. Mass. June 29, 2006) ("the triggering of a security alarm is an exigent circumstance that is sufficient to permit entry onto an individual's property to investigate for signs of burglary or other criminal activity").

Even ignoring the admitted training and policies, an "open structure" call at 2:30 in the morning, as discussed above, would carry with it the obvious implication to any officer that someone had reported the situation because of suspicious circumstances. Because Dean reasonably responded to the exigency presented by the call and did nothing more than walk around a yard, he did not conduct an unconstitutional search, and the Court should reverse and dismiss the search claim under the first prong of qualified immunity.

## 2. No clearly established law.

Given the foregoing facts and the cited law, no clearly established law provides that Dean's minimal intrusion into the yard of the subject property violated the constitution under the circumstances. Appellee has presented no remotely factually-similar case to show that the law was so clearly established such that Officer Dean should have been on notice that trying to examine the premises under the

circumstances plainly violated the constitution much less that he supposedly had a constitutional duty to disobey his orders and ignore his department's training and policies.

Dean cited the above-mentioned cases explaining that the law recognizes that responding to alarm calls provide an exigency sufficient to allow officers to enter yards to look for intruders. *See, e.g.*, *Bilida*, 211 F.3d at 171 ("Brierly's entry into the backyard in response to the silent security alarm is a perfectly good example of a perceived imminent threat . . . ."). Short of a Fifth Circuit or Supreme Court case saying that the First Circuit and other courts with similar holdings (see below) are just wrong and clearly establishing that entering yards in response to alarm or substantially similar calls is plainly unconstitutional, the analysis is easy, and Dean retains his immunity. Plaintiff has not presented and cannot present controlling authority under sufficiently similar facts clearly showing that Dean's mere perimeter search under the admitted circumstances would have been an obvious, beyond-debate constitutional violation to every reasonable police officer. The Court should reverse, hold that Dean retains his qualified immunity, and dismiss the search claim.

### 3. The district court's incorrect analysis.

In its order, the district court made two significant errors with regard to the clearly established law element. First, the district court incorrectly flipped the analysis

on its head and faulted *Defendant Dean* for failing to provide sufficient case law to justify his actions. ROA.873. The court wrote, "*Defendant* cites no binding authority suggesting . . . ." ROA.873 (emphasis added). In the next sentence, the district court faults Dean for "merely" citing cases where other courts "have concluded that burglar alarms are sufficient exigencies to justify the warrantless search of a residence." RO.873. Beyond not being clear how those case citations were somehow not proper or relevant, the district court simply dismisses them without any actual analysis of the reason for which they were cited, because they are not binding precedent in this Circuit. But all that obviously misses the point that the burden is on the *plaintiff* to overcome qualified immunity.

That is, a defendant need only raise his entitlement to qualified immunity, and once properly raised, it is only the plaintiff that bears the burden to establish that the officer violated the plaintiff's clearly established federal rights. *Argueta v. Jaradi*, 86 F.4th 1084, 1088 (5th Cir. 2023) ("This is a demanding standard [on the plaintiff not the defendant].") (quoting *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015), cert. denied, 136 S.Ct. 1517 (2016)). As this Court has explained, Plaintiff bears the "heavy" burden to show that the allegedly "violative nature of *particular* conduct" was clearly established "in light of the specific context of the case, not as a broad general proposition," and "framed with specificity and granularity."

*Morrow v. Meachum*, 917 F.3d 870, 874-75 (5th Cir. 2019) (emphasis in original).

The plaintiff "bear[s] the burden of showing that the right was clearly established,"

based on "existing precedent" that "*squarely governs* the specific facts at issue."

*Garcia v. Blevins*, 957 F.3d 596, 600 (5th Cir. 2020) (emphasis in original). In short,

the plaintiff "must point to a case almost squarely on point" to show clearly

established law. *Harmon v. City of Arlington, Texas*, 16 F.4th 1159, 1167 (5th Cir.

2021). Here, neither Plaintiff-Appellee nor the district court cite any case with

remotely similar facts to the present case.

In addition to improperly effectively putting the burden on Dean, the district

court next mis-characterizes the facts as alleged by Plaintiff-Appellee and argued by

Defendant-Appellant Dean. The district court incorrectly, or at least misleadingly,

states,

> Plaintiff does not allege, nor does Defendant dispute, that
> Defendant was not responding to an active alarm at the
> residence. Nor was Defendant responding to an emergency
> burglary-in-progress call. Indeed, Defendant was responding
> to a suspicious open-structure call placed on the police
> department's *non-emergency* line.

ROA.873-74 (emphasis in original). Even if those are not merely distinctions without

a difference, the paragraph simply is not an accurate account of Plaintiff's pleaded

facts, especially from the officer's perspective at the time, which is what matters.

Plaintiff himself absolutely does allege that Dean was responding to what he was told,

trained, and ordered to treat as an active alarm call, a residential "burglary in progress." Plaintiff alleges, "Fort Worth police officers are to investigate reports of "open doors" the same way as they would investigate a call for a "silent alarm . . . ." ROA.541. And Dean has never "[not] dispute[d]" that he knew anything other than he was responding to an open structure call he was to view as an alarm call at two-thirty in the morning. That is, as alleged by Plaintiff, Dean was given the call as an open structure call, which, as Plaintiff alleges, he was to treat as if it were an alarm or burglary call.

The district court's emphasis of the non-emergency line used by the person reporting the open structure is irrelevant to the analysis because Plaintiff does nto allege that Officer Dean knew *how* the call was placed to the department's dispatcher; he was merely dispatched to the open structure call location at 2:30 in the morning and expected to do his job to look for intruders and take actions to protect the property. Plaintiff as background explains how the call was made but does not say Dean was involved in the call taking or knew of its source. ROA.525. Plaintiff then alleges, "The radio call Dean responded to was for an 'open structure' call." ROA.525. Given what even the district court describes as a "suspicious open-structure call," and that Plaintiff admits and insists Dean was required to treat as a burglary in progress call, and with no claim by Plaintiff that Dean knew what

particular phone number the reporting person called when reporting the suspicious circumstances, Dean merely acted, even by Plaintiff's own allegations, pursuant to his training when he searched the perimeter of the home.

And for purposes of this analysis, "[w]hether [Dean] over-estimated the danger" the call presented "is immaterial." *See King v. Montgomery Cnty., Tennessee*, 797 F. App'x 949, 955–56 (6th Cir. 2020) (citing *United States v. Brown*, 449 F.3d 741, 750 (6th Cir. 2006) ("holding that an officer's warrantless entry into a home in response to a false alarm by a burglary-prevention system was nevertheless justified by exigent circumstances")). The Court in *King* explained:

> The point of the exigent circumstances doctrine is to allow an officer to respond to a potential emergency. The circumstances may ultimately prove less dire than imagined. But we do not review an officer's actions with the benefit of hindsight; we instead put ourselves in her shoes. Nor do we fault an officer for bracing for the worst. True emergencies do not lend themselves to extensive reflection; delay can mean the difference between life and death. So long as officers make reasonable efforts to gather information before acting, the Constitution is no obstacle.

*Id.* (cleaned up).

The district court never analyzed the exigency issue other than to dismiss Dean's cases as non-precedential, and never mentioned Plaintiff's failure to produce any cases showing the law to be clearly established that officers responding to suspicious open structure calls they were taught to treat as burglary calls would know

"beyond debate" that they could not view the exigency of the matter sufficient to allow them merely to enter upon the property and briefly look for bad actors, injured persons, or signs of crime. Plaintiff-Appellee cites no such cases, and the district court cites no such cases.

The district court's *only* direct attempt to discuss what law it says *is* clearly established is to say little more than that a home's curtilage is generally considered to be part of a home for purposes of a Fourth Amendment analysis. Not only is that plainly and facially too high of a level of a statement of the law to be useful, the only case the district court cites is both irrelevant to the present facts and is a non-precedential district court case that cannot clearly establish the law. ROA.874 (citing *Ybarra v. Davis*, 489 F. Supp. 3d 624, 628 (W.D. Tex. 2020)). It is not entirely settled that even Circuit precedent can clearly establish the law; a single district court case certainly cannot. *See Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4 (2021) ("Even assuming that controlling Circuit precedent [can] clearly establish[] law" it is the plaintiff's burden "to identify a case that put[s] [a defendant] on notice that his specific conduct was unlawful."); *Cooper v. Brown*, 844 F.3d 517, 525 n.8 (5th Cir. 2016) (non-precedential cases cannot clearly establish the law); *Camreta v. Greene*, 563 U.S. 692, 709 (2011) (a district court decision is not binding precedent in any court); *Woods v. Harris Cnty., Texas*, No. 22-20482, 2024 WL 1174185, at *3 (5th

Cir. Mar. 19, 2024) (one unpublished Circuit opinion and three district court opinions cannot clearly establish the law as all are non-precedential).[3]

And, even ignoring the fact that the *Ybarra* case cannot clearly establish the law even if it were relevant, it is not at all relevant. In *Ybarra*, an officer without a warrant or probable cause and despite being told by the homeowner not to do so, jumped over the homeowner's fence, detained him, threw him to the ground, and broke three of his ribs. *Ybarra*, 489 F. Supp. 3d 626-27. The plaintiff pleaded that there was no probable cause and no exigency to support the intrusion. *Id.* at 628. The defendant never argued there was an exigency. *Id.* The defendant instead argued that he had probable cause to make an arrest for a misdemeanor committed in his presence. *Id.* But without a warrant, the court wrote, the described probable cause did not justify entering the suspect's home, including its curtilage. *Id.* That was the holding of *Ybarra* and it is irrelevant to the clearly established law analysis in this case. Here, Dean was acting pursuant to the exigency presented by the nature of the call he was given. But the district court simply never examined that issue and certainly never cited cases that are so factually similar that they would have clearly

---

[3] Moreover, the incident at issue in this case occurred in 2019, ROA.522, but the *Ybarra* case cited by the district court was decided in 2020; it thus cannot have clearly established the law at the time of the incident. *Henderson v. Harris Cnty., Texas*, 51 F.4th 125, 133 (5th Cir. 2022), cert. denied sub nom. *Henderson v. Harris Cnty.*, 143 S. Ct. 2661 (2023) ("Any cases after that date 'cannot show clearly established law at the time of the violation.'").

established the law beyond debate for Officer Dean or any similarly situated officer, who, even as Plaintiff-Appellee admits, was simply doing his job as he was taught to do it.

**4.    Ample case law supports Dean's actions; none under remotely-similar facts clearly condemns it; and it is not clear even that Dean's sweep of the home's perimeter was a "search" at all under the Fourth Amendment.**

As stated above, even though under no burden to do so as the defendant official, Dean cited a number of cases in his motion showing that his actions were reasonable in light of the exigency presented by the call to which he was dispatched. *See Bilida v. McCleod*, 211 F.3d 166, 171 (1st Cir. 2000) ("Brierly's entry into the backyard in response to the silent security alarm is a perfectly good example of a perceived imminent threat . . . ."); *United States v. Johnson*, 9 F.3d 506, 510 (6th Cir. 1993); *United States v. McCullough*, 457 F.3d 1150, 1164 (10th Cir. 2006); *Sumner v. Darrin*, No. CV 03-40080-FDS, 2006 WL 8458645, at *9 (D. Mass. June 29, 2006) ("the triggering of a security alarm is an exigent circumstance that is sufficient to permit entry onto an individual's property to investigate for signs of burglary or other criminal activity").

Moreover, while a home's curtilage is considered part of the home for purposes of an officer investigating or arresting the homeowner, the issue is less than exactly clear when it comes to officers acting to protect the home and its occupants as

opposed to targeting the homeowner with the tools of criminal investigation. A warrantless search for evidence of a *homeowner's* drug possession or other criminal activity, for example, may have to stop at a certain bright line such as a the door of the home or the home's curtilage boundary.

But when responding to exigent circumstances such as alarm or similar calls, society expects officers to take certain necessary actions, and those actions may even include an officer entering into the home itself. *See, e.g.*, *Barocio v. State*, 158 S.W.3d 498, 500 (Tex. Crim. App. 2005) ("The possibility that a burglary is in progress or has recently been committed may provide officers with exigent circumstances to justify a warrantless entry."); *Thacker v. City of Columbus*, 328 F.3d 244, 259–60 (6th Cir. 2003) ("Although no case has explicitly sanctioned an entry into a private home under circumstances identical to those presented here, such precedent is not required for qualified immunity purposes. As this Court has explained in the past: "Although it need not be the case that the very action in question has been previously held unlawful, in light of pre-existing law, the unlawfulness must be apparent."); *United States v. Taylor*, 458 F.3d 1201, 1205 n.1 (11th Cir. 2006) ("responding to a 911 hang up call and two more hang-ups, trying to determine if there was an emergency that prevented the caller from answering the call-backs . . . falls squarely within the exigent circumstances exception."); *Chey v.*

*LaBruno*, 608 F. Supp. 3d 161, 182 (D.N.J. 2022) ("The 2AC alleges that Sergeant Coupe and the MAPD patrol officer responded to an intruder alarm at 2 am. Federal courts have routinely found exigent circumstances when a police officer has performed a warrantless search of a private residence in response to an activated intruder alarm.").

Here, Officer Dean had not entered the home at all; he and the other officer were still in the beginning stage of their initial perimeter sweep of the home's exterior before any decision was made as to what action to take next. But when officers conduct such minimally-invasive examinations of a home's exterior in an effort to protect the home or its occupants — even if they enter onto the homes' curtilage — it is far from clearly-established that such activity even rises to the level of an actual "search" at all for Fourth Amendment purposes. Distinguishing cases that "involve the conduct of law enforcement officers attempting to investigate suspected wrongdoing by the home owner/occupier" from those that contain some "protective element," the Sixth Circuit has noted that the "Supreme Court has stated that even the fact 'that [an] area is within the curtilage does not itself bar all police observation.'" *Taylor v. Michigan Dep't of Nat. Res.*, 502 F.3d 452, 457 (6th Cir. 2007) (citing *California v. Ciraolo*, 476 U.S. 207, 218 (1986)).

Even though the officer in *Taylor* entered onto the home's curtilage, the Court found the minimal nature of the intrusion and the apparent purpose of protecting the home or its occupants to mean that the officer's actions never even rose to the level of a search for Fourth Amendment purposes. *Taylor,* 502 F.3d at 457-58. The Court observed, "This was a situation where a common sense assessment would be that a legitimate owner could that person have been contacted, would want the officers to investigate the possible break in, which tips us in the direction of finding the officer's actions reasonable." *Id.* (cleaned up); *see also Caniglia v. Strom*, 593 U.S. 194, 200–01 (2021) (Alito, J., concurring) ("[N]ot . . . all searches and seizures conducted for non-law-enforcement purposes must be analyzed under precisely the same Fourth Amendment rules developed in criminal cases. Those rules may or may not be appropriate for use in various non-criminal-law-enforcement contexts. We do not decide that issue today.").

Here, again, Dean was responding to a suspicious open structure call he was trained and required to treat as a burglary call. As with the officer in the *Taylor* case, Plaintiff alleges no facts that suggest Dean was engaged in the "dirty business that often accompanies an unjustifiable government intrusion." *Id.* at 457 (cleaned up). He was not looking for evidence to use against the homeowner or home occupant. He was simply following his training, as Plaintiff alleges, and looking around the exterior

of the property, not to invade the homeowner's rights, but to protect the homeowner and their property.

Either the search was not a search at all for Fourth Amendment purposes, or, even if it was, Dean was reasonably acting on what he reasonably perceived to be the exigency presented by the call he received. Either way, this is not an argument Dean is charged with having to win to retain his immunity. Plaintiff-Appellant (and the district court) simply have not pointed to any cases sufficient to defeat Dean's qualified immunity under sufficiently similar facts that would have put every reasonable officer on notice that such conduct was plainly unconstitutional. Dean is entitled to qualified immunity. The Court should reverse the district court, recognize Dean's qualified immunity, and dismiss Appellee's unlawful search claim under one or both prongs of the qualified immunity analysis.

## VI.

## CONCLUSION

This case is tragic, but Officer Aaron Dean did not violate the Constitution by firing at what he reasonably perceived to be a threat (or, in the context of this motion-to-dismiss-stage proceeding, Plaintiff-Appellee has not alleged sufficient facts to show a plausible violation). With regard to the alleged unlawful search claim, Plaintiff-Appellee cannot show that Dean violated any clearly established law by

taking minimally-invasive measures to protect the property and look for potential burglars or signs thereof as he was trained and required to do. Plaintiff-Appellee cannot meet his substantial burden to overcome Dean's qualified immunity, and the Court should so hold. With respect to each claim, the Court can rely on either or both prongs of the qualified immunity analysis to do so. This Court should reverse and dismiss Plaintiff-Appellee's claims against Defendant-Appellant Dean and render final judgment in Dean's favor.

Respectfully submitted,

/s/ Kenneth E. East

Kenneth E. East
State Bar No. 00790622
THE LAW OFFICE OF KENNETH E. EAST
306 W. 7th Street, Suite 600
Fort Worth, Texas 76102
(817) 788-1111
Fax:  (817) 485-2836
ken@east.law

COUNSEL FOR DEFENDANT-APPELLANT
AARON DEAN

## CERTIFICATE OF SERVICE

I hereby certify that on June 26, 2024, I served the foregoing document on all counsel of record via the Court's CM/ECF Document Filing System.

s/ Kenneth E. East

Kenneth E. East

# CERTIFICATE OF COMPLIANCE

1.    This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and 5th Cir. R. 32.2:

this document contains **9,309** words.

2.    This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because:

this document has been prepared in a proportionally spaced typeface using WordPerfect 21.0.0.81 in "Times New Roman" 14-point font.

/s/ Kenneth E. East
Kenneth E. East
Counsel for Defendant-Appellant
Aaron Dean
Dated: June 26, 2024